## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SHARISSA YOUNG and
JAMES LOCHHEAD,

      Plaintiffs,

vs.                                 No. CIV 13-1046 JB/RHS

CITY OF ALBUQUERQUE and
the ALBUQUERQUE POLICE DEPARTMENT,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Albuquerque Police Department's Motion to Dismiss Plaintiff's Claims Against the Albuquerque Police Department, filed April 7, 2014 (Doc. 17)("MTD 1"); and (ii) Defendant City of Albuquerque's Motion and Memorandum to Dismiss Plaintiff's Municipal Liability Claims Against City of Albuquerque, filed April 7, 2014 (Doc. 18)("MTD 2").  The Court held a hearing on October 28, 2014.  The primary issues are: (i) whether Defendant Albuquerque Police Department ("APD") is a suable entity under 42 U.S.C. § 1983; (ii) whether Young may hold the City of Albuquerque, New Mexico, vicariously liable under § 1983 for alleged torts that City of Albuquerque employees committed without alleging that the City of Albuquerque has an official policy, unwritten custom, pattern or practice that caused such torts; and (iii) whether the Court should remand the Plaintiffs' state-law claims to state court if it dismisses all of the federal claims.  The Court will grant both motions to dismiss in part and deny them in part.  First, the Court will dismiss Young's § 1983 claims against the APD, because the APD is not a suable entity under § 1983.  Second, the Court will dismiss Young's § 1983 claims against the City of Albuquerque, because

she has not plausibly alleged that a municipal policy, custom, or practice caused her alleged constitutional injuries.  Third, the Court will deny the Defendants' requests in the MTD 1 and the MTD 2 to dismiss the Plaintiffs' state law claims.  The Court will give the Plaintiffs until 5:00 p.m. MST on December 31, 2014, to amend the Complaint for Replevin, Conversion, Deprivation of Due Process, Negligence, and Negligence Per Se, filed October 28, 2013 (Doc. 1-1)("Complaint"), to allege causes of action against APD Detective John Dear and any other individuals.  If the Plaintiffs fail to do so, however, the Court will decline to exercise supplemental jurisdiction over the Plaintiffs' state-law claims and will remand those claims to state court.

## FACTUAL BACKGROUND

The Court takes its facts from the Complaint, as it must when considering a motion to dismiss for failure to state a claim under rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(b)(6).  This case arises out of Dear's alleged seizure of the Plaintiffs' Harley Davidson motorcycle.  See Complaint ¶¶ 7-36, at 2-8.

On or about August 24, 2014, Plaintiff Sharissa Young purchased a 1975 Harley Davidson motorcycle ("Motorcycle") from Plaintiff James Lochhead in Albuquerque, New Mexico.  Complaint ¶ 7, at 2.  The Motorcycle is a red and gray customized FX model with a shovelhead engine and VIN number 2C22898H5.  See Complaint ¶ 8, at 2.  Lochhead had lawfully purchased the motorcycle from the widow of his friend, Joel Null, on or about October 25, 1997.  See Complaint ¶ 9, at 2.  Lochhead had also secured the required Arizona inspections and registrations at regular intervals between when he purchased the Motorcycle from Null and sold it to Young.  See Complaint ¶ 10, at 2.

When she purchased the Motorcycle from Lochhead, Young obtained the Motorcycle's valid Arizona title, insurance for the Motorcycle, and had a VIN inspection done at the New Mexico Motor Vehicle Division to register the Motorcycle in New Mexico.  Complaint ¶ 12, at 2.  On or about September 11, 2012, Dear performed an additional inspection on the Motorcycle.  See Complaint ¶¶ 13-14, at 3.  During this time, Dear was working in his capacity as an APD detective and a City of Albuquerque employee.  See Complaint ¶ 20, at 20.  When Dear inspected the Motorcycle, he told Young that three numbers in the VIN number stamped on the aluminum engine case on top of the Motorcycle's motor appeared to be in a different font than the rest of the numbers.  See Complaint ¶ 14, at 3.  Dear also informed Young that, when he removed the skid plate under the engine, he discovered a different VIN number that matched a 1979 Harley Davidson motorcycle that was stolen in 1980.  See Complaint ¶ 14, at 3.

According to Dear, police never recovered that stolen motorcycle and there was no record of it being reported as a loss to an insurance company.  See Complaint ¶ 15, at 3.  Consequently, Dear refused to return the Motorcycle or any of its parts to Young.  See Complaint ¶ 16, at 3.  Dear also refused to return the Plaintiffs' personal property that was in the Motorcycle, which included a leatherman tool bag.  See Complaint ¶ 17, at 3.  Dear had no legal basis for seizing the Motorcycle.  See Complaint ¶ 24, at 4.  There was never any notice of seizure, impoundment, or anything else sent to either Lochhead or Young about Dear's seizure of the Motorcycle.  See Complaint ¶ 18, at 3.  Neither Young nor Lochhead stole or otherwise unlawfully obtained the Motorcycle or any of its parts.  See Complaint ¶ 19, at 3.  The Plaintiffs were, and are, lawful, innocent owners and bona fide purchasers.  See Complaint ¶ 19, at 3.

"Despite many demands from Plaintiff and plaintiff's counsel for the return of the vehicle, Defendants refused."  Complaint ¶ 34, at 5.  The Defendants have not filed a petition in

a District Court for the State of New Mexico requesting the Motorcycle be declared contraband. See Complaint ¶ 29, at 5. No New Mexico court has declared the Motorcycle or any of its parts to be contraband. See Complaint ¶ 30, at 5. On July 10, 2013, the City of Albuquerque notified Young's attorney via electronic mail transmission, and without any citation to law, that it would not release the Motorcycle or any of its parts without a court order. See Complaint ¶ 36, at 6.

## PROCEDURAL BACKGROUND

Young[1] alleges three counts against the Defendants: (i) replevin, see Complaint ¶¶ 37-41, at 6 (Count I); (ii) conversion, see Complaint ¶¶ 42-46, at 6-7 (Count II); and (iii) violations of her substantive and procedural due-process rights[2] under the Fourteenth Amendment to the Constitution of the United States of America and the Constitution of the State of New Mexico, see Complaint, ¶¶ 47-54, at 7 (Count III). Young and Lochhead together allege one count against the Defendants: negligence and negligence per se (Count IV). See Complaint ¶¶ 55-59,

---

[1]Although the Complaint refers to both Young and Lochhead as Plaintiffs, see Complaint ¶¶ 1-2, at 1, it states that "Plaintiff" brings Counts I-III. See, e.g., Complaint ¶ 38, at 6 ("Plaintiff's property was wrongfully seized by Defendants."); id. ¶ 44, at 6 ("Defendants wrongfully converted Plaintiff's property."). Although the Complaint does not explicitly state which plaintiff brings which claims, the paragraphs under Counts I-III refer to "her property" -- which indicates that Young brings those claims alone. Complaint ¶ 41, at 6 ("Plaintiff should be granted an Order of Replevin requiring Defendants to return the motorcycle to Plaintiff, and award all damages allowable by law for the unlawful detention of her property." (emphasis added)); id. ¶ 50, at 7 ("Defendants have deprived Plaintiff of her property rights without due process of law." (emphasis added)). The Complaint compounds this confusion by referring to both "Plaintiffs" and "Plaintiff" in the paragraphs under Count IV. Complaint ¶ 55, at 8 ("Plaintiffs incorporate by reference, as if fully set forth herein, all allegations in the preceding and succeeding paragraphs."); id. ¶ 56, at 8 ("Defendants owed Plaintiffs a duty to exercise ordinary care."); id. ¶ 59, at 8 ("As a direct and proximate result of Defendants' negligence, Plaintiff has been damaged in amounts to be proven at trial."). Given that the Complaint identifies both Young and Lochhead as Plaintiffs, the Court interprets the paragraphs under Count IV as bringing negligence and negligence claims on behalf of both Young and Lochhead.

[2]Although the Court recognizes that substantive and procedural due-process claims are two separate causes of actions -- and the Court will analyze them accordingly -- Young alleges both under "Count III - Deprivation of Due Process." Complaint at 7. To accurately represent the Complaint, therefore, the Court will describe them here as a single count.

at 7-8.  Regarding the replevin claim, Young asserts that the Defendants wrongfully seized the Motorcycle, that she lawfully owns the Motorcycle, and that the Court should grant her an Order of Replevin requiring the Defendants to return the Motorcycle to her.  See Complaint ¶¶ 38-41, at 6.  Regarding the conversion claim, Young alleges that the Defendants converted her Motorcycle intentionally, willfully, and with gross and deliberate disregard for her rights.  See Complaint ¶¶ 43-44, at 6.

As to her due-process claim, Young argues that the Defendants acted under color of state law and caused her to be deprived of her rights under the Constitutions and laws of the United States and the State of New Mexico.  See Complaint ¶ 48, at 7.  Young asserts that the Defendants have deprived her of her property rights without due process of law -- by, for example, failing to give her proper notice and an opportunity to be heard before seizing her property.  See Complaint ¶¶ 50-51, at 7.  Young alleges that the Defendants conduct violated her "rights to procedural and substantive due process under the United States Constitution and New Mexico Constitution."  Complaint ¶ 52, at 7.

Regarding their negligence and negligence per se claim, the Plaintiffs argue that the Defendants owed them a duty to exercise ordinary care.  See Complaint ¶ 56, at 8.  The Plaintiffs contend that the Defendants breached this duty by negligently seizing and then converting the Motorcycle.  See Complaint ¶ 57, at 58.  The Plaintiffs assert that the Defendants also breached their duty of care by violating N.M. Stat. Ann. § 66-3-507.  See Complaint ¶ 57, at 8.

1.    **MTD 1.**

The APD filed the MTD 1 on April 7, 2014.  See MTD 1 at 1.  In the MTD 1, the APD asks the Court to dismiss the Plaintiffs' claims against it, because it is not a suable entity.  See MTD 2 at 2.  The APD asserts that it is an administrative department of the City of Albuquerque,

which is a municipal corporation.  See MTD 2 at 2.  According to the APD, administrative departments of municipal corporations lack legal identities apart from the municipality, and, therefore, are not suable entities.  See MTD 2 at 2 (citing, e.g., Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992); Stump v. Gates, 777 F. Supp. 808 (D. Colo. 1991) aff'd 986 F.2d 1429 (10th Cir. 1993); Post v. City of Fort Lauderdale, 750 F. Supp. 1131 (S.D. Fla. 1990)).  The APD also states:

> In a non-precedential opinion, the Tenth Circuit indicated that APD is not a "suable entity under Section 1983" because it lacks a legal identity apart from the municipality.  Ketchum v. Albuquerque Police Department, 958 F.2d 381 (table, 1992 WL 51481 (10th Cir. March 12, 1992)).  The Ketchum decision is consistent with decisions reached in the New Mexico District Courts which conclude that APD is not a suable entity.  See Maxwell v. City of Albuquerque Police Department et al., CIV No. 02-0568 LH/LFG (D.N.M. Memorandum Opinion and Order filed August 1, 2001); and Montoya v. City of Albuquerque et al., CIV No. 96-341 JC/DJS (D.N.M. Memorandum Opinion and Order filed October 4, 1994).  Thus, Plaintiffs' cause of action against APD is improper because the police department, as an administrative department of the City of Albuquerque, is not a suable entity.

MTD 1 at 3.

The Plaintiffs responded to the MTD 1 on May 23, 2014.  See Plaintiffs' Response to Defendant Albuquerque Police Department's Motion and Memorandum to Dismiss [Doc. 17], filed May 23, 2014 ("MTD 1 Response").  The Plaintiffs advance two arguments in the MTD 1 Response.  See MTD 1 Response at 2-3.  First, the Plaintiffs argue that the United States Courts of Appeals cases that the APD relies on hold only that municipal police departments are not suable entities for § 1983 claims -- they say nothing about whether APD can be sued under state law.  See MTD 1 Response at 2.  The Plaintiffs point out that APD cited a case in which the United States Court of Appeals for the Ninth Circuit held that a police department could be sued under California law.  See MTD 1 Response at 2 (citing Shaw v. State of Ca. Dep't of Alcoholic Beverage Control, 788 F.2d 600, 605 (9th Cir. 1986)("We conclude that the courts of California

would hold that the Police Department is a public entity under section 811.2.  Thus, under Fed. R. Civ. P. 17(b) the Police Department may be sued in Federal Court")).  The Plaintiffs say that the Complaint alleges "distinct actions that APD made as a public entity to deprive Plaintiffs of their property, and other employees at the City of Albuquerque who separately refused to return Plaintiffs' property."  MTD 1 Response at 2.  According to the Plaintiffs, because the APD has not explained why the Court should dismiss their replevin, conversion, or negligence claims, the Court should deny the MTD 1 on those claims.  See MTD 1 Response at 3.  Second, the Plaintiffs assert, without further explanation, that "[e]ach public entity should be held accountable under Section 1983 for its actions."  MTD 1 Response at 3.  The Plaintiffs also request that, in the alternative, the Court allow them to amend the Complaint to include claims against the individual detective instead of dismissing their claims against APD.  See MTD Response at 3.

       **2.**      **MTD 2.**

      The City of Albuquerque filed the MTD 2 on April 7, 2014.  See MTD 2 at 1.  In the MTD 2, the City of Albuquerque asks the Court to dismiss the Plaintiffs' § 1983 claims against it.  See MTD 2 *passim*.  The City of Albuquerque argues that the Plaintiffs may not hold it vicariously liable for a City of Albuquerque employee's allegedly tortious acts, but must instead show that the employee acted pursuant to a municipal custom or policy.  See MTD 2 at 4-5 (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).  The City of Albuquerque contends that the Plaintiffs cannot establish such a policy "merely by identifying a policymaker's conduct that is properly attributable to the municipality."  MTD 2 at 5.  Instead, according to the City of Albuquerque, the Plaintiffs must show that the City has a "'custom' of engaging in conduct which is unconstitutional, 'widespread,' 'permanent and well-settled.'"  MTD 2 at 5

(quoting City of St. Louis v. Praprotnik, 485 U.S. 127 (1988)).  The City of Albuquerque also asserts that the Plaintiffs must show that a history of widespread prior abuse put it on notice that it must take corrective action to prevent similar occurrences in the future.  See MTD 2 at 5 (citing Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000); Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998)).  The City of Albuquerque states that the Complaint does not allege: (i) any facts indicating that the City of Albuquerque had a policy, custom, or practice that led to the Plaintiffs' injuries; or (ii) any facts that would show that City of Albuquerque policymakers were aware -- or should have been aware -- of any alleged misconduct by City of Albuquerque employees.  See MTD 2 at 6-7.  The City of Albuquerque argues that the Court should, accordingly, dismiss the Plaintiffs' § 1983 claims against it.  See MTD 2 at 7.

The Plaintiffs responded to the MTD 2 on May 23, 2014.  See Plaintiffs' Response in Opposition to Defendant City of Albuquerque's Motion and Memorandum to Dismiss Plaintiffs' Municipal Liability Claims Against City of Albuquerque, filed May 23, 2014 (Doc. 21)("MTD 2 Response").  In the MTD 2 Response, the Plaintiffs state that, contrary to the City of Albuquerque's contentions, Young's due-process claims are not based solely on vicarious liability.  See MTD 2 Response at 3.  In the Plaintiffs' view, the City of Albuquerque is also directly liable, because: (i) "[t]here was never any notice of seizure, notice of impoundment, or any other written notification sent to either Plaintiff about the seizure of the motorcycle," MTD 2 Response at 3 (citation omitted); (ii) the "Defendants violated New Mexico law by holding Plaintiff's property beyond the statutory maximum of 6 days and never sought an ex parte order allowing impoundment as required by N.M.S.A. 66-3-507(B)," MTD 2 Response at 3; (iii) the Defendants never filed a petition in a State of New Mexico court requesting the motorcycle be declared contraband, see MTD 2 Response at 3; and (iv) despite Young's numerous demands to

return the Motorcycle -- not only from Dear, but also from the City Attorney's office -- the Defendants have refused to do so, see MTD 2 Response at 4. In the Plaintiffs' view, "[t]hese facts showing culpability by the municipality itself absolutely states a municipal liability claim." MTD 2 Response at 4. The Plaintiffs argue that, moreover, the Defendants' continued disregard of their rights "shows a systemic problem in the procedure for seizing vehicles." MTD 2 Response at 4.

The Plaintiffs contend that the MTD 2 did not address Young's procedural due-process claim. See MTD 2 Response at 5. According to the Plaintiffs, to prevail on either a procedural or substantive due-process claim under § 1983, they must "first establish that a defendant's actions deprived plaintiff of a protectable property interest." MTD 2 Response at 5 (quoting Nichols v. Bd. of Cnty. Comm'rs, 506 F.3d 962, 969 (10th Cir. 2007))(internal quotation marks omitted). The Plaintiffs state that, to plausibly allege a procedural due-process claim, they instead must show that "the government process which it must follow is insufficient to protect its ownership rights." MTD 2 Response at 5 (citing Winters v. Bd. of Cnty. Comm'rs, 4 F.3d 848 (10th Cir. 1989)). The Plaintiffs state:

> The complaint alleged that Plaintiff had a property right in her motorcycle, that Defendants have deprived Plaintiff of her property rights without due process of law by failing to give proper notice and an opportunity to be heard. Moreover the complaint specifically states that Defendants' conduct violates Plaintiff's rights to procedural and substantive due process under the United States Constitution and New Mexico Constitution.

MTD 2 Response at 6.

The City of Albuquerque replied to the MTD 2 Response on June 12, 2014. See Defendant City of Albuquerque's Reply to Plaintiffs' Response to the Motion and Memorandum to Dismiss Plaintiffs' Municipal Liability Claims Against City of Albuquerque, filed June 12, 2014 (Doc. 24)("MTD 2 Reply"). The City of Albuquerque raises two new arguments in the

MTD 2 Reply.  See MTD 2 Reply at 4-8.  First, the City of Albuquerque argues that it did not

violate Young's substantive due-process rights, because its conduct did not "shock the

conscience."  MTD 2 Reply at 5 (citing Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995)).

The City of Albuquerque explains that "[i]t is only when the reasons set forth for the

governmental action have so little relationship to a legitimate state interest so as to shock the

conscience that substantive due process is implicated."  MTD 2 Reply at 5 (citing Cnty. of

Sacramento v. Lewis, 523 U.S. 833 (1998)).  The City of Albuquerque argues that, because it has

a legitimate interest in seizing stolen property like the Motorcycle, such conduct does not shock

the conscience.  See MTD 2 Reply at 7.

     Second, the City of Albuquerque contends that Young received all of the procedural due

process to which she was entitled.  See MTD 2 Reply at 6-7.  The City of Albuquerque states:

> NMSA 66-3-507 deals with altered vehicle identification numbers and the
> definition of contraband.  The main purpose of construing statutes is to determine
> the meaning and intent of the legislature.  Roth v. Thompson, 113 N.M. 331, 332,
> 825 P.2d 1241, 1242 (1991).  In State ex rel. Dep't of Public Safety v. One 1896
> Peterbilt Tractor, the New Mexico Court of Appeals held that:
>
> > the provisions of Section 66-3-507, when read together, clearly
> > evince a legislative intent that a person in possession of a vehicle
> > or engine must make adequate inquiry and inspection to determine
> > that the vehicle or engine's VIN has not been altered, defaced, or
> > destroyed.  Section 66-3-507(B) provides that when a law
> > enforcement officer finds that a vehicle or vehicle engine has an
> > altered or removed VIN, there is a presumption that the vehicle
> > and/or engine is contraband.  The Section 66-3-507(B) procedures
> > ensure that the declaration is by petition of the State to a court of
> > general jurisdiction and after a hearing.  Section 66-3-507(B) also
> > requires an owner of a vehicle/engine having an altered VIN to
> > furnish the court with records indicating the identity of all
> > intermediate owners in order for the owner of the vehicle/engine
> > having an altered VIN to be entitled to its return.  Lastly, Section
> > 66-3-507(C) provides exceptions to the declaration that the
> > vehicle/engine is contraband.

1997-NMCA-050, ¶ 10 (emphasis added).  Section 66-3-507(C) states "the vehicle, motor vehicle or motor vehicle engine or component shall not be considered contraband when (1) it has been determined that the vehicle, motor vehicle or motor vehicle engine or component has been reported as stolen."  The Court further held that NMSA 66-3-507 "does not violate due process," 1997-NMCA-050, ¶ 9.

MTD 2 Reply at 6 (citations omitted)(internal quotation marks omitted).  The City of Albuquerque contends that, as stolen property, the Motorcycle and its parts "clearly fall into the Section 66-3-507(C) exception to contraband and therefore are also exempted from the 66-3-507 (B) requirements for a petition and a hearing in front of a court to declare items contraband." MTD 2 Reply at 7.  The City of Albuquerque states that, because Young could not prove her lawful ownership of the Motorcycle, Dear "could not return the motorcycle until [Young] could obtain the proper paperwork from a judge advising that the motorcycle was now legally hers." MTD 2 Reply at 7.  The City of Albuquerque concludes, therefore, that Young received all of the procedural due process to which she was entitled given § 66-3-507 and the Motorcycle's status as stolen property.  See MTD 2 Reply at 7.

**3.    The October 28, 2014 Hearing.**

The Court held a hearing on October 28, 2014.  See Transcript of Hearing (taken October 28, 2014)(" Tr.").[3]  At the hearing, the parties largely reiterated the arguments from the briefing. See Oct. 28, 2014 Tr. at 1:23-15:13 (Dalton, Garcia).  Regarding the MTD 1, the APD reiterated that it is not a suable entity, because it is an arm of the City of Albuquerque municipal corporation.  See Tr. at 12:11-25 (Dalton).  The APD also pointed out that cases have not limited this holding to § 1983 claims, but instead have concluded that police departments are not suable entities generally.  See Tr. at 12:25-13:5 (Dalton)(citing Maxwell v. City of Albuquerque Police

_____

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final version may have slightly different page and/or line numbers.

Department, No. CIV 02-0568 (D.N.M. Dec. 30, 2012)(Hansen, J.)).  The Plaintiffs responded

that the Court should allow the claims against the APD to go forward, because the Complaint

alleges distinct causes of action against it as opposed to the City of Albuquerque.  See Tr. at

13:16-14:10 (Garcia).

Addressing the MTD 2, the Plaintiffs clarified that the Complaint alleges only that the

City of Albuquerque had an informal custom or practice, and not a formal policy, of depriving

individuals of their property rights without due process.  See Tr. at 5:3-6:7 (Garcia).  The City of

Albuquerque responded that, because the Complaint does not allege the existence of an informal

policy that motivated Detective Dear's decisions, it does not state a plausible § 1983 claim.  See

Tr. at 10:1-6 (Dalton).  The Court said that it was inclined to grant both motions to dismiss.  See

Tr. at 11:16-12:8 (Court).  Regarding the MTD 1, the Court stated that the Plaintiffs could not

sue APD as a separate entity, but must instead sue the City of Albuquerque.  See Tr. at 12:2-9

(Court).  Regarding the MTD 2, the Court said that the Complaint did not sufficiently allege

enough facts to indicate that the City of Albuquerque has a formal policy, custom, or practice

that caused the alleged constitutional violations.  See Tr. at 11:16-25 (Court).

## LAW REGARDING RULE(12)(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion

tests the sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  The sufficiency

of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must

accept as true all well-pleaded factual allegations in the complaint, view those allegations in the

light most favorable to the non-moving party, and draw all reasonable inferences in the

plaintiff's favor.   See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.")(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   Ashcroft v. Iqbal, 556 U.S. at 678.  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citation omitted).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)("To determine whether a motion to dismiss was properly granted, we apply a plausibility standard to ascertain whether the complaint includes enough facts that, if assumed to be true, state a claim to relief that is plausible on its face.").  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at

556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

The Tenth Circuit has held that "Iqbal establishes the importance of context to a plausibility determination." Gee v. Pacheco, 627 F.3d 1178, 1185 (10th Cir. 2010).

> "[P]lausibility" in th[e general pleading] context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(citations omitted).

## LAW REGARDING LIABILITY FOR CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487

U.S. 42, 48 (1988). Individual, non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)("The requisite causal connection is satisfied if [the defendants] set in motion a series of events that [the defendants] knew or reasonably should have known would cause others to deprive [the plaintiffs] of [their] constitutional rights.")(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)). The Supreme Court has made clear that there is no respondeat superior liability under 42 U.S.C. § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to Bivens[4] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). "An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor." Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for the employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

1. **Color of State Law.**

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1447 (10th Cir. 1995). The under-color-of-state-law requirement is a "jurisdictional requisite for a § 1983 action, which . . .

---

[4]In Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court held that a violation of the Fourth Amendment to the Constitution of the United States of America "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." 403 U.S. at 389.

furthers the fundamental goals of preserving an area of individual freedom by limiting the reach of federal law . . . and avoiding imposing on the state, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed." Jojola v. Chavez, 55 F.3d 488, 492 (10th Cir. 1995). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. at 49 (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). "The authority with which the defendant is allegedly 'clothed' may be either actual or apparent." Jojola v. Chavez, 55 F.3d at 493. Accordingly, at a base level, to find that an action was taken under color of state law, the court must find that "'the conduct allegedly causing the deprivation of a federal right' must be 'fairly attributable to the State.'" Gallagher v. Neil Young Freedom Concert, 49 F.3d at 1447 (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982)).

In the context of a public employee, the Tenth Circuit has directed that, while "'state employment is generally sufficient to render the defendant a state actor . . . [,]' at the same time, it is 'well settled that an otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state.'" Jojola v. Chavez, 55 F.3d at 493 (quoting Lugar v. Edmonson Oil Co., 457 U.S. at 935-36 n.18; Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995)). Thus, "before conduct may be fairly attributed to the state because it constitutes action 'under color of state law,' there must be 'a real nexus' between the employee's use or misuse of their authority as a public employee, and the violation allegedly committed by the defendant." Jojola v. Chavez, 55 F.3d at 493. What constitutes the required real nexus, however, is not completely clear. As the Tenth Circuit has stated, whether there is a real nexus in a particular case depends on the circumstances:

- 16 -

> The under color of law determination rarely depends on a single, easily identifiable fact, such as the officer's attire, the location of the act, or whether or not the officer acts in accordance with his or her duty.  Instead one must examine "the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties."

David v. City & Cnty. of Denver, 101 F.3d 1344, 1353 (10th Cir. 1996)(citations omitted)(quoting Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995)).

### 2.    Individual Liability.

Government actors may be liable for the constitutional violations that another committed, if the actors "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights," thus establishing the "requisite causal connection" between the government actor's conduct and a plaintiff's constitutional deprivations.  Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit has explained that § 1983 liability should be "'read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'"  Martinez v. Carson, 697 F.3d at 1255 (quoting Monroe v. Pape, 365 U.S. 167, 187 (1961), overruled in part by Monell v. Dep't of Soc. Servs., 436 U.S. at 663).  "Thus, Defendants are liable for the harm proximately caused by their conduct."  Martinez v. Carson, 697 F.3d at 1255 (citing Trask v. Franco, 446 F.3d at 1046).  As the Court has previously concluded, "a plaintiff who establishes liability for deprivations of constitutional rights actionable under 42 U.S.C. § 1983 is entitled to recover compensatory damages for all injuries suffered as a consequence of those deprivations.  The recovery should be guided by common-law tort principles -- including principles of causation . . . ."  Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1251 (D.N.M. 2009)(Browning, J.).

The Tenth Circuit has found liability for those defendants who proximately caused an injury alleged under § 1983 and stated that the fact that the "conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendant]," so long as there was not a superseding-intervening cause of a plaintiff's harm. Lippoldt v. Cole, 468 F.3d 1204, 1220 (10th Cir. 2006).

> Even if a factfinder concludes that the residential search was unlawful, the officers only "would be liable for the harm 'proximately' or 'legally' caused by their tortious conduct." Bodine v. Warwick, 72 F.3d 393, 400 (3d Cir. 1995). "They would not, however, necessarily be liable for all of the harm caused in the 'philosophic' or but-for sense by the illegal entry." Id. In civil rights cases, a superseding cause, as we traditionally understand it in tort law, relieves a defendant of liability. See, e.g., Warner v. Orange Cnty. Dep't of Prob., 115 F.3d 1068, 1071 (2d Cir. 1997); Springer v. Seaman, 821 F.2d 871, 877 (1st Cir. 1987), abrogated on other grounds by Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701 . . . (1989).

Trask v. Franco, 446 F.3d at 1046. Thus, in the context of a claim under the Fourth Amendment, the Tenth Circuit has held that government actors "may be held liable if the further unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability." Martinez v. Carson, 697 F.3d at 1255. The Tenth Circuit gave an example of a superseding-intervening cause, quoting the Honorable Samuel J. Alito, then-United States Circuit Judge for the United States Court of Appeals for the Third Circuit, now-Associate Justice for the Supreme Court:

> Suppose that three police officers go to a suspect's house to execute an arrest warrant and that they improperly enter without knocking and announcing their presence. Once inside, they encounter the suspect, identify themselves, show him the warrant, and tell him that they are placing him under arrest. The suspect, however, breaks away, shoots and kills two of the officers, and is preparing to shoot the third officer when that officer disarms the suspect and in the process injures him. Is the third officer necessarily liable for the harm caused to the suspect on the theory that the illegal entry without knocking and announcing rendered any subsequent use of force unlawful? The obvious answer is "no." The suspect's conduct would constitute a "superseding" cause, see Restatement

(Second) of Torts § 442 (1965), that would limit the officer's liability.  See id.
§ 440.

Trask v. Franco, 446 F.3d at 1046 (quoting Bodine v. Warwick, 72 F.3d at 400).  Additionally,

"[f]oreseeable intervening forces are within the scope of the original risk, and . . . will not

supersede the defendant's responsibility."  Trask v. Franco, 446 F.3d at 1047 (quoting William

Lloyd Prosser et al., Prosser and Keeton on Torts § 44, at 303-04 (5th ed. 1984)).  If

> the reasonable foreseeability of an intervening act's occurrence is a factor in
> determining whether the intervening act relieves the actor from liability for his
> antecedent wrongful act, and under the undisputed facts there is room for
> reasonable difference of opinion as to whether such act was wrongful or
> foreseeable, the question should be left for the jury.

Trask v. Franco, 446 F.3d at 1047 (citing Restatement (Second) of Torts § 453 cmt. b (1965)).

### 3.      Supervisory Liability.

The Tenth Circuit has held that supervisors are not liable under 42 U.S.C. § 1983 unless

there is "'an affirmative link . . . between the constitutional deprivation and either the

supervisor's personal participation, . . . exercise of control or direction, or . . . failure to

supervise.'"  Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009)(quoting Green v.

Branson, 108 F.3d 1296, 1302 (10th Cir. 1997))(alterations omitted).  Because supervisors can be

held liable only for their own constitutional or illegal policies, and not for the torts that their

employees commit, supervisory liability requires a showing that such policies were a "deliberate

or conscious choice."  Barney v. Pulsipher, 143 F.3d at 1307-08 (citations omitted)(internal

quotation marks omitted).  Cf. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not

enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.

The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the

'moving force' behind the injury alleged."  (emphasis in original)).

The Tenth Circuit has recognized that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, 2011 WL 7444745, at *25-26 (citing Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is as follows: "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199.  The Tenth Circuit noted that Ashcroft v. Iqbal "does not purport to overrule existing Supreme Court precedent," but stated that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200.  It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200.  The Tenth Circuit, based on this conclusion, set forth a test for supervisory liability under § 1983 after Ashcroft v. Iqbal:

> A plaintiff may . . . succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

Dodds v. Richardson, 614 F.3d at 1199-1200 (citing Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  The Tenth Circuit noted, however: "We do not mean to imply that these are distinct analytical prongs, never to be intertwined."  Dodds v. Richardson, 614 F.3d at 1200 n.8.  Relying on the Supreme Court's opinion in Board of County Commissioners v. Brown, the Tenth Circuit reasoned that two of the prongs often, if not always, are sufficient proof that the third prong has been met also:

> Where a plaintiff claims that a particular municipal action itself violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward.  Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying federal right.  In any § 1983 suit, however, the plaintiff must establish the state of mind required to prove the underlying violation.  Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.  Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

Dodds v. Richardson, 614 F.3d at 1200 n.8 (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404-05)(internal quotation marks omitted).  The Tenth Circuit noted that "[w]e think the same logic applies when the plaintiff sues a defendant-supervisor who promulgated, created, implemented or possessed responsibility for the continued operation of a policy that itself violates federal law."  Dodds v. Richardson, 614 F.3d at 1200 n.8.  Thus, the Tenth Circuit reduced the test to what can be seen as a two-part test for supervisor liability, requiring the plaintiff to prove "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'"  Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

4.     **Municipal Liability.**

A municipality will not be held liable under § 1983 solely because its officers inflicted injury.  See Graves v. Thomas, 450 F.3d 1215, 1218 (10th Cir. 2006).  Rather, to establish municipal liability under § 1983, a plaintiff must demonstrate: (i) that an officer committed an underlying constitutional violation; (ii) that a municipal policy or custom exists; and (iii) that there is a direct causal link between the policy or custom, and the injury alleged.  See Graves v. Thomas, 450 F.3d at 1218.  When a claim is brought against a municipality for failing to train its officers adequately, the plaintiff must show that the municipality's inaction was the result of deliberate indifference to the rights of its inhabitants.  See Graves v. Thomas, 450 F.3d at 1218.

**LAW REGARDING SUBSTANTIVE DUE-PROCESS CLAIMS**

The Fourteenth Amendment's Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV, § 1.  In general, state actors may be held liable under § 1983 only for their own affirmative acts that violate a plaintiff's due process rights and not for third parties' acts.  See Robbins v. Oklahoma, 519 F.3d at 1251 (citing DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197).  "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors."  DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. at 195.  The Due Process Clause is not a guarantee of a minimal level of safety and security.  See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. at 195.

1.     **Exceptions to the General Rule.**

There are, however, two exceptions to this general rule.  The first exception -- the special-relationship doctrine -- arises when the state has a custodial relationship with the victim,

which triggers an affirmative duty to provide protection to that individual.  See Christiansen v. City of Tulsa, 332 F.3d 1270, 1280 (10th Cir. 2003); Graham v. Indep. Sch. Dist. No. 1-89, 22 F.3d 991, 994-95 (10th Cir. 1994).  The second exception -- the danger-creation theory -- provides that a state may also be liable for an individual's safety "only when 'a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence.'"  Robbins v. Oklahoma, 519 F.3d at 1251 (quoting Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)).  "If either the special-relationship or danger-creation exception applies, the conduct of the state actor must go beyond negligence to the point of 'shocking the conscience.'"  Glover v. Gartman, 899 F. Supp. 2d 1115, 1135 (D.N.M. 2012)(Browning, J.)(citing Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1142 (10th Cir. 2006)("The shocks the conscience standard applies to both types of suits.")).

      2.      **Special-Relationship Exception.**

The first exception to the general principle that a state's negligent failure to protect an individual cannot trigger liability under the due-process clause is the special-relationship doctrine.  A plaintiff must show that they were involuntarily committed to state custody to establish a duty to protect under the special-relationship doctrine.  See Liebson v. N.M. Corr. Dep't, 73 F.3d 274, 276 (10th Cir. 1996).  "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)."  Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995).

      3.      **Danger-Creation Exception.**

The Due Process Clause protects against "deliberately wrongful government decisions rather than merely negligent government conduct."  Uhlrig v. Harder, 64 F.3d at 573.  The

danger-creation exception to this rule applies only when "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001).  See Estate of B.I.C. v. Gillen, 702 F.3d 1182, 1187 (10th Cir. 2012)("[S]tate officials can be liable for the acts of private parties where those officials created the very danger that caused the harm.").  Under a danger-creation theory, there is no § 1983 liability absent "an intent to harm" or "an intent to place a person unreasonably at risk of harm." Uhlrig v. Harder, 64 F.3d at 573.  A plaintiff must show "sufficient[] 'affirmative conduct on the part of the state in placing the plaintiff in danger.'"  Estate of B.I.C. v. Gillen, 702 F.3d at 1187 (quoting Gray v. Univ. Colo. Hosp. Auth., 672 F.3d 909, 916 (10th Cir. 2012)).  To state a prima-facie case, the plaintiff must show that his or her danger-creation claim for due-process violations meets a six-part test: (i) the state and individual actors must have created the danger or increased plaintiff's vulnerability to the danger in some way; (ii) the plaintiff must be a member of a limited and specifically definable group; (iii) the defendant's conduct must put the plaintiff at substantial risk of serious, immediate, and proximate harm; (iv) the risk must be obvious and known; (v) and the defendant must have acted recklessly in conscious disregard of that risk.  See Pena v. Greffet, 922 F. Supp. 2d 1187, 1227 (D.N.M. 2013)(Browning, J.)(citing Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist., 511 F.3d 1114, 1126 (10th Cir. 2008)).

In determining whether the danger-creation exception applies, the Tenth Circuit has focused on the deliberateness of the conduct in relation to the caused harm.  See Christiansen v. City of Tulsa, 332 F.3d at 1281.  The defendant must recognize the unreasonableness of the risk of the conduct and act "with an intent to place a person unreasonably at risk." Medina v. City & Cnty. of Denver, 960 F.2d at 1496.  The intent to place a person unreasonably at risk is present where the defendant "is aware of a known or obvious risk" creating a high probability that

serious harm will follow, and the defendant nonetheless proceeds with a "conscious and unreasonable disregard of the consequences."  Medina v. City & Cnty. of Denver, 960 F.2d at 1496.

### 4.      What Shocks the Conscience.

A government actor's official conduct intended to injure in a way that cannot reasonably be justified by any government interest most likely shocks the conscience.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)("[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level.").  "[A] plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power."  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1222 (10th Cir. 2006)(quoting Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006)(internal quotation marks omitted)).  "The plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking."  Camuglia v. City of Albuquerque, 448 F.3d at 1222-23 (quoting Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995))(internal quotation marks omitted).

> Establishing these limits advances "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety."

Camuglia v. City of Albuquerque, 448 F.3d at 1223 (quoting Uhlrig v. Harder, 64 F.3d at 574).

"Whether the conduct shocks the conscience is an objective test, based on the circumstances, rather than a subjective test based on the government actor's knowledge."  Pena v. Greffet, 922 F. Supp. 2d at 1227 (citing James v. Chavez, 830 F. Supp. 2d 1208, 1276 (D.N.M. 2011)(Browning, J.)(finding that the use of deadly force did not shock the conscience

even if the suspect did not have an intent to harm the officer, because the officer "had sufficient facts before him to conclude that there was a threat of serious physical harm" and the "courts must evaluate a [government actor's] conduct objectively") aff'd, 511 F. App'x 742 (10th Cir. 2013)).

In Martinez v. Uphoff, 265 F.3d 1130 (10th Cir. 2001), the widow of a corrections officer sued the director, deputy director, warden, and deputy wardens of the department of corrections, alleging that the defendants deliberately failed to ensure proper training and supervision of penitentiary personnel, failed to provide safe and adequate staffing, and failed to take corrective action to protect her husband, all of which resulted in him being killed during the escape of three inmates.  See 265 F.3d at 1132.  The district court found that the plaintiff failed to state a § 1983 claim for violation of the Due Process Clause under a danger-creation theory because the defendants' actions were "not of such a magnitude that the Court is able to conclude they shock the conscience."  265 F.3d at 1134.  The Tenth Circuit agreed with the district court's conclusion, stating: "[U]nder the circumstances of this case, inaction in the face of known dangers or risks [was] not enough to satisfy the danger-creation theory's conscience shocking standard."  265 F.3d at 1135.

In Schaefer v. Las Cruces Public School District, 716 F. Supp. 2d 1052 (D.N.M. Apr. 30, 2010)(Browning, J.), the plaintiffs alleged that the defendants -- the school district, superintendent, principal, and vice principal of a middle school -- violated the plaintiffs' substantive due-process rights when they did not take sufficient action to prevent a student at the school from "racking"[5] the plaintiffs' son.  716 F. Supp. 2d at 1072-73.  The Court concluded

_____

[5]The parties in Schaefer v. Las Cruces Public School District defined being "racked" as being "kicked and/or punched in the testicles."   716 F. Supp. 2d at 1059 n.2 (citations omitted)(internal quotation marks omitted).

that the defendants' conduct did not shock the conscience. See 716 F. Supp. 2d at 1074-75. The

Court explained:

> Assuming the absolute worst from the Schaefers' alleged facts, the Defendants were aware of three instances of an unknown eighth-grade student racking various sixth-grade students within the span of a month, and failed to implement policies to improve hallway monitoring and stop this conduct from occurring in time to prevent [the plaintiffs' son] from falling victim to the same fate. Further, the Defendants indicated to the sixth graders that it had policies in place to punish individuals that assaulted other students but did not, in fact, have such policies.

> While such behavior may be worthy of remedy under tort law, and perhaps worthy of punishment in the form of punitive damages, the Court's conscience is not shocked . . . .

> Any number of actions by the Defendants might have remedied the problem, but the Court's conscience is not shocked by the Defendants' failure to consider or implement such a policy. Even if the Defendants knew that students frequently -- more than three times per month -- attacked other students in the halls and declined to implement safety measures to minimize that conduct, the Court is not convinced that it would rise to the level of shocking the conscience.

716 F. Supp. 2d at 1074-75.

## LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty,

or property, without due process of law." U.S. Const. amend. XIV. The Due Process Clause

encompasses two distinct forms of protection: (i) procedural due process, which requires a state

to employ fair procedures when depriving a person of a protected interest; and (ii) substantive

due process, which guarantees that a state cannot deprive a person of a protected interest for

certain reasons. See Reid v. Paulter, No. CIV 13-0337 JB/KBM, 2013 WL 3845042, at *50

(D.N.M. July 31, 2014)(Browning, J.)(citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-

46 (1998)). "Under either form of protection, however, a person must have a protected interest

in either life, liberty, or property." Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633,

2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.).  The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural due-process rights were violated: (i) "Did the individual possess a protected property interest to which due process protection was applicable?"; and (ii) "Was the individual afforded an appropriate level of process?"  Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir. 2006)(quoting Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)(internal quotation marks omitted)).

     "The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment."  Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994)(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  "Such an interest arises not from the Due Process Clause of the Constitution itself, but is created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract."  Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007).  See Paul v. Davis, 424 U.S. 693, 710 (1976)("[Liberty and property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.").

> Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  See Farthing v. City of Shawnee, Kan., 39 F.3d at 1135 ("Rather, property interests, which are the subject of the present litigation, 'are

created and their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S.

at 577)).

"[O]nce it is determined that the Due Process Clause applies, the question remains what

process is due." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing

Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "An essential principle of due process is that a

deprivation of life, liberty, or property be preceded by notice and opportunity for hearing

appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542

(citation omitted). "[D]ue process is flexible and calls for such procedural protections as the

particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976). The Supreme

Court has explained that

> the root requirement of the Due Process Clause as being that an individual be
> given an opportunity for a hearing before he is deprived of any significant
> property interest. This principle requires some kind of a hearing prior to the
> discharge of an employee who has a constitutionally protected property interest in
> his employment.
>
> . . . .
>
> [T]he pretermination hearing, though necessary, need not be elaborate. We have
> pointed out that [t]he formality and procedural requisites for the hearing can vary,
> depending upon the importance of the interests involved and the nature of the
> subsequent proceedings. In general, something less than a full evidentiary hearing
> is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted)(citations

omitted)(internal quotation marks omitted).

The United States Court of Appeals for the Second Circuit has stated:

> The Supreme Court . . . explained that procedural due process is a flexible
> standard that can vary in different circumstances depending on "'the private
> interest that will be affected by the official action'" as compared to "the
> Government's asserted interest, 'including the function involved' and the burdens

the Government would face in providing greater process." Hamdi v. Rumsfeld, 542 U.S. 507, [529] (2004)(quoting Mathews v. Eldridge, 424 U.S. at 335). A court must carefully balance these competing concerns, analyzing "'the risk of an erroneous deprivation' of the private interest if the process were reduced and the 'probable value, if any, of additional or substitute safeguards.'" Id. (quoting Mathews v. Eldridge, 424 U.S. at 335).

United States v. Abuhamra, 389 F.3d 309, 318 (2d Cir. 2004). The hearing required depends on: (i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest and the burdens that additional procedures might impose. See Mathews v. Eldridge, 424 U.S. at 335. For example, "[w]here . . . the state must act quickly, a meaningful postdeprivation hearing is adequate." Clark v. City of Draper, 168 F.3d at 1189. See Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989) (removal of a child from parents' custody requires predeprivation hearing "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.").

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982). "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'" Roybal v. City of Albuquerque, No. CIV 08-0181 JB/LFG, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The Supreme Court deems it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against

- 30 -

federal officials." Butz v. Economou, 438 U.S. 478, 504 (1978). "The qualified immunity

analysis is the same whether the claims are brought under Bivens or pursuant to the post-Civil

War Civil Rights Acts." Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997), overruled

on other grounds as recognized in Currier v. Doran, 242 F.3d 905 (10th Cir. 2001).

> Under § 1983 (invoked in this case) and Bivens v. Six Unknown Fed. Narcotics
> Agents, 403 U.S. 388 . . . (1971), a plaintiff may seek money damages from
> government officials who have violated her constitutional or statutory rights. But
> to ensure that fear of liability will not "unduly inhibit officials in the discharge of
> their duties," Anderson v. Creighton, 483 U.S. 635, 638 . . . (1987), the officials
> may claim qualified immunity; so long as they have not violated a "clearly
> established" right, they are shielded from personal liability, Harlow v. Fitzgerald,
> 457 U.S. 800, 818 . . . (1982). That means a court can often avoid ruling on the
> plaintiff's claim that a particular right exists. If prior case law has not clearly
> settled the right, and so given officials fair notice of it, the court can simply
> dismiss the claim for money damages. The court need never decide whether the
> plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

Camreta v. Green, 131 S. Ct. 2020, 2030-31 (2011).

Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."

Pearson v. Callahan, 555 U.S. 223, 232 (2009)(quoting Hunter v. Bryant, 502 U.S. 224, 227

(1991)(per curiam)). "If qualified immunity is to mean anything, it must mean that public

employees who are just doing their jobs are generally immune from suit." Lewis v. Tripp, 604

F.3d 1221, 1230 (10th Cir. 2010).

Qualified immunity shields government officials from liability where "their conduct does

not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457

U.S. at 818). Qualified immunity also shields officers who have "reasonable, but mistaken

beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law.

Saucier v. Katz, 533 U.S. at 205. When a defendant asserts qualified immunity, the plaintiff must

demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights;

and (ii) that the right was clearly established at the time of the alleged misconduct.  See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).

### 1.    **Procedural Approach to Qualified Immunity.**

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense.  In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."  555 U.S. at 236.  The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz -- by which a court first decides if the defendant's actions violated the Constitution, and then the court determines if the right violated was clearly established -- will often be beneficial.  See Pearson v. Callahan 555 U.S. at 241.  In rejecting the prior mandatory approach, the Supreme Court recognized that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," and that such an approach burdens district court and courts of appeals with "what may seem to be an essentially academic exercise."  555 U.S. at 237.  The Supreme Court also recognized that the prior mandatory approach "departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable."  555 U.S. at 241 (alterations omitted)(internal quotation marks omitted).  See Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)(affirming Pearson v. Callahan's procedure and noting that deciding qualified immunity issues on the basis of a right being not "clearly established" by prior case law "comports with our usual reluctance to decide constitutional questions unnecessarily").  Once the plaintiff establishes an inference that the defendant's conduct violated a clearly established

constitutional right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

The Supreme Court recognizes seven circumstances where district courts should proceed directly to and "should address only" the clearly established prong of the qualified immunity analysis: when (i) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (ii) "it appears that the question will soon be decided by a higher court"; (iii) deciding the constitutional question requires "an uncertain interpretation of state law"; (iv) "qualified immunity is asserted at the pleading stage," and "the precise factual basis for the . . . claim . . . may be hard to identify"; (v) tackling the first element "may create a risk of bad decisionmaking," because of inadequate briefing; (vi) discussing both elements risks "bad decisionmaking," because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (vii) the doctrine of "constitutional avoidance" suggests the wisdom of passing on the first constitutional question when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right."  Kerns v. Bader, 663 F.3d 1173, 1180-81 (10th Cir. 2011)(quoting Pearson v. Callahan, 555 U.S. at 236-42)(internal quotation marks omitted). Regarding the last of these seven circumstances, the Supreme Court has clarified that courts may "avoid avoidance" and address the first prong before the second prong in cases involving a recurring fact pattern, where guidance on the constitutionality of the challenged conduct is necessary, and the conduct is likely only to face challenges in the qualified immunity context. Camreta v. Greene, 131 S. Ct. at 2031-32.  See Kerns v. Bader, 663 F.3d at 1181.[6]  "Courts

---

[6]In Kerns v. Bader, the Tenth Circuit reversed the Court's decision that an officer was not entitled to qualified immunity, noting that the Court "analyzed both aspects of the qualified immunity test before agreeing" with the plaintiff that the qualified immunity defense did not protect the officer.  663 F.3d at 1183.  In reversing, the Tenth Circuit stated:

> Because we agree with Sheriff White on the latter (clearly established law) question, we reverse without addressing the former (constitutional violation) question. And we pursue this course because doing so allows us to avoid rendering a decision on important and contentious questions of constitutional law with the attendant needless (entirely avoidable) risk of reaching an improvident decision on these vital questions.

663 F.3d at 1183-84. The Tenth Circuit did not analyze whether the officer violated the plaintiff's constitutional rights and stated that guidance on the particular constitutional issue would be more appropriate in a case not involving qualified immunity: "Neither do we doubt that the scope of the Constitution's protection for a patient's hospital records can be adequately decided in future cases where the qualified immunity overlay isn't in play (e.g., through motions to suppress wrongly seized records or claims for injunctive or declaratory relief)." 663 F.3d at 1187 n.5. On remand, the Court stated:

> While the Court must faithfully follow the Tenth Circuit's decisions and opinions, the Court is troubled by this statement and the recent trend of the Supreme Court's hesitancy in § 1983 actions to address constitutional violations. A Reconstruction Congress, after the Civil War, passed § 1983 to provide a civil remedy for constitutional violations. See Mitchum v. Foster, 407 U.S. 225, 238-39 (1972). In Mitchum v. Foster, the Supreme Court explained:
>
>> Section 1983 was originally § 1 of the Civil Rights Act of 1871 . . . and was enacted for the express purpose of "enforc(ing) the Provisions of the Fourteenth Amendment." . . . The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment.
>
> 407 U.S. at 238-39. Congress did not say it would remedy only violations of "clearly established" law, but that
>
>> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

- 34 -

42 U.S.C. § 1983 (emphasis added).  The Supreme Court established the qualified immunity defense in Pierson v. Ray, 386 U.S. 547 (1967), and held that officials were not liable for constitutional violations where they reasonably believed that their conduct was constitutional.  See E. Clarke, Safford Unified Sch. Dist. No. 1 v. Redding: Why Qualified Immunity is a Poor Fit in Fourth Amendment School Search Cases, 24 B.Y.U. J. Pub. L. 313, 329 (2010).  The Supreme Court first introduced the "clearly established" prong in reference to an officer's good faith and held that a compensatory award would only be appropriate if an officer "acted with such an impermissible motivation or with such disregard of the [individual's] clearly established constitutional rights that his action cannot reasonably be characterized as being in good faith."  Wood v. Strickland, 420 U.S. 308, 322 (1975).  In Harlow v. Fitzgerald, when the Supreme Court moved to an objective test, the clearly-established prong became a part of the qualified immunity test. See 457 U.S. at 818 ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.").  It seems ironic that the federal courts would restrict a congressionally mandated remedy for constitutional violations -- presumably the rights of innocent people -- and discourage case law development on the civil side -- and restrict case law development to motions to suppress, which reward only the guilty and is a judicially created, rather than legislatively created, remedy. Commentators have noted that, "[o]ver the past three decades, the Supreme Court has drastically limited the availability of remedies for constitutional violations in" exclusionary rule litigation in a criminal case, habeas corpus challenges, and civil litigation under § 1983.  J. Marceau, The Fourth Amendment at a Three-Way Stop, 62 Ala. L. Rev. 687, 687 (2011).  Some commentators have also encouraged the courts to drop the suppression remedy and the legislature to provide more -- not less -- civil remedies for constitutional violations.  See Christopher Slobogin, Why Liberals Should Chuck the Exclusionary Rule, 1999 U. Ill. L. Rev. 363, 390-91 (1999)("Behavioral theory suggests that the exclusionary rule is not very effective in scaring police into behaving. . . .  These theories also suggest that a judicially administered damages regime . . . would fare significantly better at changing behavior at an officer level."); Hon. Malcolm R. Wilkey, Constitutional Alternatives to the Exclusionary Rule, 23 S. Tex. L.J. 531, 539 (1982)(criticizing the exclusionary rule and recommending alternatives).  In Hudson v. Michigan, 547 U.S. 586 (2006), the Supreme Court noted that civil remedies were a viable alternative to a motion to suppress when it held that the exclusionary rule was inapplicable to cases in which police officers violate the Fourth Amendment when they fail to knock and announce their presence before entering.  See 547 U.S. at 596-97.  Rather than being a poor or discouraged means of developing constitutional law, § 1983 seems the better and preferable alternative to a motion to suppress.  It is interesting that the current Supreme Court and Tenth Circuit appear more willing to suppress evidence and let criminal defendants go free, than have police pay damages for violations of innocent citizens' civil rights.  It is odd

should think carefully before expending 'scarce judicial resources' to resolve difficult and novel

questions of constitutional or statutory interpretation that will 'have no effect on the outcome of

the case.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)(quoting Pearson v. Callahan, 555

U.S. at 236-37).  See Camreta v. Greene, 131 S. Ct. at 2032 ("In general, courts should think

hard, and then think hard again, before turning small cases into large ones.").[7]  The Tenth Circuit

_____

       that the Supreme Court has not adopted a clearly established prong for
suppression claims; it seems strange to punish society for police violating unclear
law in criminal cases, but protect municipalities from damages in § 1983 cases.

Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d 1176, 1224 n.36 (D.N.M. 2012)(Browning, J.),
abrogated on other grounds as recognized in Ysasi v. Brown, No. CIV 13-0183 JB/CG, 2014 WL
936835, at *9 n.24 (D.N.M. Feb. 28, 2014)(Browning, J.).

    [7]In Kerns v. Board of Commissioners, the Court expressed concern with Justice Elena
Kagan's comments about "large" and "small" cases:

    While the Court is, of course, obligated to follow faithfully the Supreme Court's
decisions and opinions, the Court has always been unenlightened and even
troubled by Justice Elena Kagan's comments in Camreta v. Greene about "large"
and "small" cases.  131 S. Ct. at 2032.  As a trial judge, the Court has tried
assiduously to avoid thinking about or categorizing some cases as "large" and
some as "small."  It usually is not mentally healthy for a judge to put all his or her
energy into "large" cases and slight "small cases"; to the litigants, their case is the
most important case on the Court's docket, and it is usually wise for the judge to
treat each case on which he or she is working -- at that moment -- as the most
important case at that moment.  Getting the decision "right," i.e. getting the law
and facts correct and accurate, is obviously important, but getting it right is only
one-half of a judge's task, particularly a trial judge's job.  The other half of
dispensing justice is the appearance of justice -- did the Court listen to the
litigant's arguments, wrestle with those arguments, and deal with them in an
intellectually honest way.  Americans are pretty good about accepting a judicial
decision -- even an adverse one -- and cease obsessing over an issue, if they are
convinced that an authority figure has dressed up, taken them seriously, listened
patiently and politely, wrestled with the arguments, addressed them, and
accurately stated the facts.  The Court believes that, if it starts looking at some
cases before it as "large" and some as "small," it begins a slippery slope that does
not accomplish both halves of the task of dispensing justice.  The justice system
depends so much on the nation respecting and accepting the courts' proceedings
and decisions, because courts have very little "power" that does not depend on

will remand a case to the district court for further consideration when the district court has given

cursory treatment to the clearly established prong of the qualified immunity analysis.  See Kerns

v. Bader, 663 F.3d at 1182.

---

that acceptance.  Thus, Justice Kagan's comments are not only not self-defining, but they are disturbing.

If, perhaps, a "large" case is a Supreme Court case or one that comes from the East Coast or California, rather than one in a district court in New Mexico, then it helps to look at what cases the Supreme Court has decided for the plaintiff. The three most recent qualified immunity cases, the Supreme Court dealt with are: (i) Reichle v. Howards, 132 S. Ct. 2088 (2012); (ii) Filarksy v. Delia, 132 S. Ct. 1657 (2012); and (iii) Messerschmidt v. Millender, 132 S. Ct. 1235 (2012).  In Reichle v. Howards, the Supreme Court determined that secret service agents were entitled to qualified immunity for arresting a protestor who touched the Vice President and held that it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation.  See 132 S. Ct. at 2092, 2097.  In Filarsky v. Delia, the Supreme Court held that a private individual that the government hires to do its work, an internal affairs review, is entitled to seek qualified immunity for Fourth and Fourteenth Amendment violations. See 132 S. Ct. at 1660, 1668.  In Messerschmidt v. Millender, the Supreme Court held that police officers in Los Angeles, California were entitled to qualified immunity when they relied on an invalid warrant to search a home, because a reasonable officer would not have realized the error.  See 132 S. Ct. at 1241, 1250.  The Supreme Court has not denied qualified immunity since 2004 in Groh v. Ramirez, 540 U.S. 551 (2004), where it held that an officer unreasonably relied on a deficient warrant.  See 540 U.S. at 565. The Court does not think those presumably "large" cases (they are Supreme Court cases, after all) are any different -- substantively, legally, or factually -- than this case involving the search of a citizen's home after someone shot down a police helicopter and then detained that suspect for nine months until the United States realized that J. Kerns could not have shot down the helicopter.

On the flip side, treating large cases like they are large cases can create an appearance problem to the public and to the litigants -- that only big cases deserve the Court's attention.  A trial judge can overwork a "large" case.  It is better to treat even "large" cases like every other case; large cases and their litigants need to know and appreciate that they are not the only case on the court's docket, and realize that the scarcity of judicial resources applies to them too.

Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d at 1222 n.35.

## 2.      Clearly Established Rights in the Qualified Immunity Analysis.

To determine whether a right was clearly established, a court must consider whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'"  Lobozzo v. Colo. Dep't of Corr., 429 F. App'x 707, 710 (10th Cir. 2011)(unpublished)[8](quoting Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001).  On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful."

---

[8]Lobozzo v. Colo. Dep't of Corr is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Lobozzo v. Colo. Dep't of Corr, Muller v. Culbertson, 408 F. App'x 194 (10th Cir. 2011)(unpublished), Henderson v. National R.R. Passenger Corp., 412 F. App'x 74 (10th Cir. 2011)(unpublished), Henry v. Albuquerque Police Department, 49 F. App'x 272 (10th Cir. 2002)(unpublished),  Ketchum v. Albuquerque Police Department, No. CIV 91-2200, 1991 WL 51481 (10th Cir. Mar. 12, 1991)(unpublished) have persuasive value with respect to material issues and will assist the Court in its preparation of this Memorandum Opinion and Order.

Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Holland ex rel. Overdorff v. Harrington, 268 F.3d at 1186 (alteration in original)(quoting Saucier v. Katz, 533 U.S. at 202).  A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts."  Pierce v. Gilchrist, 359 F.3d at 1298.

The Supreme Court has clarified that the clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  Ashcroft v. al-Kidd, 131 S. Ct. at 2083.  "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  Reichle v. Howards, 132 S. Ct. at 2093 (quoting Ashcroft v. al-Kidd, 131 S. Ct. at 2083).  "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified."  Anderson v. Creighton, 483 U.S. at 639.  "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."  Ashcroft v. al-Kidd, 131 S. Ct. at 2084.  The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law.  Saucier v. Katz, 533 U.S. at 205.

The Tenth Circuit held in <u>Kerns v. Bader</u> that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction <u>might</u> make a constitutional difference."   663 F.3d at 1188 (emphasis in original).   In <u>Kerns v. Bader</u>, dealing with the search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was <u>beyond debate</u> in 2005 that the officers' entry and search lacked legal justification."   663 F.3d at 1183 (emphasis added).   Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established.   See <u>Casey v. City of Fed. Heights</u>, 509 F.3d 1278, 1284 (10th Cir. 2007)("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."). "[W]hen an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law."   <u>Casey v. City of Fed. Heights</u>, 509 F.3d at 1284.   Furthermore, "general statements of the law are not inherently incapable of giving fair and clear warning . . . ."   <u>Hope v. Pelzer</u>, 536 U.S. at 741.

In <u>Rivera v. Bates</u>, No. CIV 12-0473 JB/RHS, 2014 WL 3421050 (D.N.M. June 21, 2014)(Browning, J.), the Court used the <u>Kerns v. Bader</u> qualified-immunity framework to determine if it was clearly established that arresting a suspect in his underwear and failing to retrieve his clothing to cover him up while he is transported from his house to a patrol car makes the arrest unreasonable.   See 2014 WL 3421050, at *54.   The Court stated:

> Even if the Court could, on the record before it, conclude, as a matter of law, that the manner in which Hernandez effectuated the arrest was [un]reasonable, the Court finds that the law was not clearly established such that a reasonable officer in Hernandez' position would have recognized that he needed to retrieve clothing for S. Rivera rather than escort him directly to the police vehicle.   As the Tenth Circuit has emphasized, although "a case on point isn't required if the impropriety

- 40 -

of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction *might* make a constitutional difference." Kerns v. Bader, 663 F.3d at 1188 (emphasis in original).  In Kerns v. Bader, dealing with the search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was *beyond debate* in 2005 that the officers' entry and search lacked legal justification."  663 F.3d at 1183 (emphasis added).  Here, S. Rivera has relied on Cortez v. McCauley to establish that his clearly established rights were violated, but the Tenth Circuit in that case stated that it had "little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment."  663 F.3d at 1128.  The Tenth Circuit only made one comment regarding Cortez' clothing during the arrest:

> Although the dignity aspects of this arrest are troubling, specifically hauling Rick Cortez (clad only in his shorts) into the patrol car in the middle of the night without any explanation, the police were investigating a serious felony and claimed a need for quick action to separate the accused from any other children that might be in the home.

478 F.3d at 1128-29.  The Tenth Circuit did not explain what would have to be different about the "dignity aspects" for the arrest to violate the Fourth Amendment.  More importantly, the Court emphasizes that Hernandez did not participate in any of the alleged wrongdoing inside S. Rivera's house, nor did he refuse to allow S. Rivera to get dressed; instead, Hernandez was involved in the arrest only after S. Rivera was outside the house.  S. Rivera has not pointed to, nor has the Court been able to identify, any cases that demand that an officer delay taking the arrestee to a police vehicle so the officer can enter the arrestee's home to search for clothing or otherwise find some covering for an arrestee on the way to the police vehicle.  The Court will thus grant the MSJ on S. Rivera's excessive and unreasonable force claim against Hernandez.

Rivera v. Bates, 2014 WL 3421050, at *54 (emphases in Rivera v. Bates but not in original).

## LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).  Federal courts "possess only that power authorized by [the] Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-

question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction.  See 28 U.S.C. §§ 1331-32.  Section 1367 additionally grants the federal courts power to hear claims over which the court lacks original jurisdiction, if those claims are part of the same constitutional case as claims over which the court has original jurisdiction.  See 28 U.S.C. § 1367(a).

### 1.      Congressional Authority to Exercise Supplemental Jurisdiction.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."  Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552.  The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in two common-law doctrines, pendent jurisdiction and ancillary jurisdiction; § 1367's passage permitted codified those forms of jurisdiction, and additionally courts to also hear cases under pendent-party jurisdiction, which the Supreme Court had previously disallowed in Finley v. United States, 490 U.S. 545 (1989).  Federal courts may exercise pendent jurisdiction over state law claims when "state and federal claims ... derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties, whose insertion into the litigation does not have the support of any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it.  See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 375 n.18 (1978).

In 1988, the Honorable William H. Rehnquist, then-Chief Justice of the Supreme Court, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms.  See James v. Chavez, No. CIV 09–0540 JB/CG, 2011 WL 6013547, at *5 (D.N.M. Nov.21, 2011)(Browning, J.)(citing 16 Moore's Federal Practice § 106.04[5] (Matthew Bender 3d ed.)).  In response to the Committee's findings regarding pendent, ancillary, and pendent-party jurisdiction, Congress codified the doctrines when it passed the Judicial Improvements Act of 1990:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), reprinted in 22 Conn. L. Rev. 733, 787 (1990).

## 2.    The District Courts' Discretion to Exercise Supplemental Jurisdiction.

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction not as a litigant's right, but as a matter of judicial discretion.  See Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d 1161, 1165 (10th Cir. 2004)(citing City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial

- 43 -

economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction.  383 U.S. at 726.

Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

    (1)      the claim raises a novel or complex issue of State law,

    (2)       the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3)      the district court has dismissed all claims over which it has original jurisdiction, or

    (4)       in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity . . . ."  Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164. Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction.  See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered Gibbs' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Ct., 24 F.3d 1545, 1557 (9th Cir. 1994)( "By codifying preexisting applications of Gibbs in subsections (c)(1)-(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."), overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533

F.3d 1087 (9th Cir. 2008); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994)("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c) . . . ."); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *8 (D.N.M. Apr. 30, 2009)(Browning, J.) ("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists."). At least one other district court in the Tenth Circuit besides this Court has reached the same conclusion. See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated.").

The Tenth Circuit has held that district courts should presume to decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)). This proclamation is consistent with the Supreme Court's statement that

> [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726 (footnote omitted).

The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C. § 1367(c) applies. See Armijo v. New Mexico, No. CIV 08–0336 JB/ACT, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.)("The

Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.").  The Tenth Circuit has recognized that a district court does not "abuse [its] discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it has dismissed all claims over which it has original jurisdiction." Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)(internal quotation marks omitted).

## ANALYSIS

The Court will grant both motions to dismiss in part and deny them in part.  First, the Court will dismiss Young's § 1983 claims against the APD, because the APD is not a suable entity under § 1983.  Second, the Court will dismiss Young's § 1983 claims against the City of Albuquerque, because she has not plausibly alleged that a municipal policy, custom, or practice caused her  alleged constitutional injuries.  Third, the Court will deny the Defendants' requests in the MTD 1 and the MTD 2 to dismiss the Plaintiffs' state-law claims.  The Court will give the Plaintiffs until 5:00 p.m. on December 31, 2014, to amend the Complaint to allege causes of action against Dear and any other individuals.  If the Plaintiffs fail to do so, however, the Court will decline to exercise supplemental jurisdiction over the Plaintiffs' state-law claims and will remand those claims to state court.

## I.     YOUNG CANNOT PLAUSIBLY ALLEGE A § 1983 CLAIM AGAINST THE APD.

The Tenth Circuit has stated that "police departments . . . are not suable entities under § 1983, because they lack legal identifies apart from the municipality."   Ketchum v. Albuquerque Police Dep't, No. CIV 91-2200, 1991 WL 51481, at *2 (10th Cir. Mar. 12, 1991)(unpublished).  See Henry v. Albuquerque Police Dep't, 49 F. App'x 272, 274 n.1 (10th Cir. 2002)(unpublished)("The district court properly relied on an unpublished decision from this

court holding that the Albuquerque Police Department lacks a legal identity apart from the City of Albuquerque."); Martinez v. Winder, 771 F.2d 424, 444 (10th Cir. 1985)(holding that the City of Denver Police Department is not a suable entity). Accordingly, the United States District Court for the District of New Mexico has consistently held that the APD is not a suable entity. See, e.g., Costales v. Schultz, No. CIV 07-827 MV/ACT, Memorandum Opinion and Order ¶¶ 4-5, at 3 (D.N.M. Nov. 13, 2009)(Vazquez, J.)(Doc. 25); Maxwell v. City of Albuquerque Police Dep't, No. CIV 02-0568 LH/LFG, Memorandum Opinion and Order at 2 (D.N.M. Dec. 30, 2002)(Hansen, J.)(Doc. 24); Diaz v. Second Judicial Dist. Court, No. CIV 00-0700 JC/DJS, Memorandum Opinion and Order at 8-9 (D.N.M. Aug. 1, 2001)(Conway, J.)(Doc. 75). Because the APD is merely a department of the City of Albuquerque, it is not a proper party and cannot be held liable for the Young's § 1983 claims. The Court will, accordingly, dismiss the her § 1983 claims against the APD.

## II.   YOUNG FAILS TO STATE A § 1983 CLAIM AGAINST THE CITY OF ALBUQUERQUE.

Young fails to state a § 1983 claim against the City of Albuquerque. The Supreme Court has made clear that there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). "[L]ocal governments are responsible only for 'their own illegal acts.'" Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011)(quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. at 694.

The Tenth Circuit has described several types of actions that may constitute a municipal policy or custom:

> A municipal policy or custom may take the form of (i) "a formal regulation or policy statement"; (ii) an informal custom "amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; (iii) "the decisions of employees with final policymaking authority"; (iv) "the ratification by such final policymakers of the decisions -- and the basis for them -- of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (v) the "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."

Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010)(citations omitted).

Young contends that Dear, a City of Albuquerque employee, inspected the Motorcycle and found that it contained stolen parts.  See Complaint ¶ 13, at 3.  She further asserts that Dear seized the motorcycle without due process and failed to petition a State of New Mexico court to declare the property contraband.  See Complaint ¶¶ 16, 18, at 3.  Young next alleges that "despite many demands from Plaintiff and plaintiff's counsel for the return of the vehicle, Defendants refused."  Complaint ¶ 34, at 5.  She also argues that, on July 10, 2013, "Defendant City of Albuquerque notified Plaintiff's counsel via email . . . that Defendant would not release the motorcycle or any part thereof, without an Order from a Court."  Complaint ¶ 36, at 6.

Even if the Court assumes that such conduct constitutes a due process violation, there is no indication that a municipal policy or custom caused such a violation.  Young concedes that there is no formal municipal policy of unlawfully seizing vehicles.  See Tr. at 4:25-5:2 (Court, Garcia).  Instead, she suggests that there is an informal custom or practice among City of Albuquerque employees of depriving individuals of their property rights without due process. See Tr. at 5:3-6:7 (Garcia).  The Court disagrees.

The Supreme Court of the United States has recognized that "a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).  For a § 1983 claim based on custom to withstand Rule 12(b)(6) dismissal, the plaintiff must sufficiently allege the following:

> (1) The existence of a continuing, persistent and widespread practice of unconstitutional misconduct by the [municipality's] employees;
>
> (2) Deliberate indifference to or tacit approval of such misconduct by the [municipality's] policymaking officials . . . after notice to the officials of that particular misconduct; and
>
> (3) That the plaintiff was injured by virtue of the unconstitutional acts pursuant to the . . . custom and that the custom was the moving force behind the unconstitutional acts.

Rehberg v. City of Pueblo, No. CIV 10-00261 LTB/KLM, 2012 WL 1326575, (D. Colo. Apr. 17, 2012)(Babcock, J.)(quoting Gates v. Unified Sch. Dist. No. 449, 996 F.2d 1035, 1041 (10th Cir. 1993))(modifications in Rehberg v. City of Pueblo but not in original)(internal quotation marks omitted).  Young's § 1983 claim against the City of Albuquerque fails for two reasons.

First, far from asserting that the misconduct in this case was widespread, Young has not alleged any facts -- such as statistics, records of complaints filed with the city, or even anecdotal evidence -- that would indicate that the misconduct alleged in this case was more than an isolated incident.  In fact, Young cannot point to another instance in which a City of Albuquerque employee has deprived another individual of his or her property rights without due process.  A single incident is insufficient to establish the existence of a custom or practice.  See City of St. Louis v. Praprotnik, 485 U.S. at 127 (explaining that a custom requires that the alleged misconduct is "widespread" -- i.e., involving a "series of decisions").

Second, Young does not identify a "policymaking official" that was either deliberately indifferent to or tacitly approved of the alleged misconduct.  Gates v. Unified Sch. Dist. No. 449, 996 F.2d at 1041.  As the Supreme Court of the United States has explained, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability."  Pembaur v. City of Cincinnati, 475 U.S. at 481.  Instead, "[m]unicipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."  Pembaur v. City of Cincinnati, 475 U.S. at 481.

In Flanagan v. Munger, 890 F.2d 1557, 1568-69 (10th Cir. 1989), for example, the Tenth Circuit held that the Chief of the Colorado Springs Police Department  ("CSPD") possessed final authority to establish municipal policy with respect to personnel decisions within the CSPD, because the municipal code granted him exclusive authority to manage the CSPD and there was no established procedure to review his personnel decisions.  See 890 F.2d at 1568-69.  By contrast, in Ware v. Unified School District Number 492, 902 F.2d 815 (10th Cir. 1990), the Tenth Circuit concluded that a school principal was not the final policymaker on personnel matters because the local school board could review all of his decisions.  See 902 F.2d at 819. Unlike in Flanagan v. Munger, Young does not allege any facts which would suggest that Dear or the unnamed City of Albuquerque employee or employees who refused to release the Motorcycle "possesse[d] final authority to establish municipal policy" with respect to the Motorcycle's seizure,  Pembaur v. City of Cincinnati, 475 U.S. at 481.  Unlike a police chief, detectives like Dear typically do not possess final authority to establish any of their police department's policies.  Regarding the unnamed City of Albuquerque employee or employees, the Complaint does not include a single detail about what position or positions that individual or those individuals held, what department they were in, or any other facts from which the Court

could reasonably conclude that he, she, or they have final authority to establish municipal policy in any area.  Similar to Moss v. Kopp, 559 F.3d 1155 (10th Cir. 2009), where the Tenth Circuit held that the plaintiffs did not state a valid § 1983 claim against a municipality because they did not allege that the purportedly unconstitutional incident occurred pursuant to a decision by a city policymaker, the Plaintiffs in this case do not state a valid § 1983 claim because they do not trace the allegedly unconstitutional actions to a decision by a city policymaker.  See Moss v. Kopp, 559 F.3d at 1169.  Consequently, the actions of Dear and unnamed City of Albuquerque employees do not give rise to a § 1983 action against the City of Albuquerque.

### III.   UNLESS THE PLAINTIFFS MOVE TO AMEND THE COMPLAINT BY 5:00 P.M. MST ON DECEMBER 31, 2014, THE COURT WILL REMAND THE PLAINTIFFS' STATE-LAW CLAIMS TO STATE COURT.

At the October 28, 2014, hearing, the Court said that the Plaintiffs could move to amend the Complaint to allege causes of action against Dear.    See Tr. at 15:2-8 (Court, Garcia)("GARCIA:  What would be the proper vehicle [for amending the Complaint]?  THE COURT:  I think at that point you'd want to move to amend the complaint . . . .").  Although almost two months have gone by since the hearing, the Plaintiffs have made no such motion.  Consequently, the Plaintiffs must move to amend their Complaint by 5:00 p.m. MST on December 31, 2014, to add Dear and any other individual defendants.  If the Plaintiffs fail to do so, the Court will decline to exercise its supplemental jurisdiction and will remand the state-law claims to state court.

Congress has provided district courts with discretion to exercise supplemental jurisdiction over a state law claims in four situations:

(1)     the claim raises a novel or complex issue of State law,

(2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)     the district court has dismissed all claims over which it has original
        jurisdiction, or

(4)     in exceptional circumstances, there are other compelling reasons for
        declining jurisdiction.

28 U.S.C. § 1367(c).  Here, the Court has dismissed all of the Plaintiffs' federal claims -- that is,

all claims over which the Court has original jurisdiction.  See 28 U.S.C. § 1367(c)(3).  The Tenth

Circuit has noted: "When all federal claims have been dismissed, the court may, and usually

should, decline to exercise jurisdiction over any remaining state claims."  Koch v. Del City, 660

F.3d 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149

F.3d 1151, 1156 (10th Cir. 1998))(internal quotation marks omitted).  See Brooks v. Gaenzle,

614 F.3d 1213, 1229 (10th Cir. 2010)("[The Tenth Circuit has] generally held that 'if federal

claims are dismissed before trial, leaving only issues of state law, the federal court should

decline the exercise of jurisdiction by dismissing the case without prejudice."   (quoting

Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997)(alterations omitted)(internal

quotation marks omitted)).  The Supreme Court has recognized:

> Needless decisions of state law should be avoided both as a matter of comity and
> to promote justice between the parties, by procuring for them a surer-footed
> reading of applicable law.  Certainly, if the federal claims are dismissed before
> trial, even though not insubstantial in a jurisdictional sense, the state claims
> should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. at 726.  This Court has previously stated that a

district court should usually decline to exercise supplemental jurisdiction when 28 U.S.C.

§ 1367(c) applies.  See Armijo v. New Mexico, 2009 WL 3672828, at *4 ("The Supreme Court

and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.");

James v. Chavez, 2011 WL 6013547, at *11.  Additionally, the Tenth Circuit has held that a

district court does not commit an "abuse of discretion" when it declines to exercise supplemental

jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction[.]'" Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished).

As the Court has dismissed Young's federal claims, only the Plaintiffs' state-law claims remain. Given the Supreme Court's and the Tenth Circuit's guidance, the Court would normally remand those claims to state court. To give the Plaintiffs an opportunity to amend the Complaint to add federal claims against Dear and any other individuals, however, the Court will not remand the state-law claims to state court at this point. The Court has conducted its own independent research and concludes that it has jurisdiction to allow such a motion. See Henderson v. Nat'l R.R. Passenger Corp., 412 F. App'x 74, 78-79 (10th Cir. 2011)(unpublished)(holding that a district court retained supplemental jurisdiction over the plaintiff's state-law claims after dismissing the plaintiff's federal claims and did not abuse its discretion by declining to remand the case to state court); New Mexico v. Gen. Elec. Co., 467 F.3d 1223, 1242 n.29 (10th Cir. 2006)(concluding that once the district court dismissed the State's federal claims in a removed case, the district court did not abuse its discretion under § 1367 in choosing to exercise supplemental jurisdiction over the remaining state law claims); United Int'l Holdings v. Wharf, 210 F.3d 1207, 1220 (10th Cir. 2000)("[A] district court has the constitutional power to exercise supplemental jurisdiction over state claims even after a federal claim has been dismissed, provided the federal claim was not insubstantial from the outset."). The Court concludes that Tenth Circuit and Supreme Court precedent demonstrate that whether the Court should decline to continue to exercise jurisdiction is entrusted to the Court's sound discretion. See Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009)("[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise. A district court's

decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."  (citations omitted)); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. at 726 ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.").  Granted, Congress and the Tenth Circuit have severely circumscribed that discretion but it remains.  Consequently, the Court concludes that it has a residual modicum of discretion to allow the Plaintiffs to move to amend the Complaint at this time.

Because the Defendants have answered, the Plaintiffs will need to move to amend; if the Defendants believe that the Court does not have jurisdiction to allow amendment, it can so argue in its response to the motion to amend.  If the Plaintiffs fail to move to amend the Complaint by 5:00 p.m. MST on December 31, 2014, however, the Court will decline to exercise jurisdiction over the Plaintiffs' remaining state-law claims and will remand those claims to state court.

**IT IS ORDERED** that: (i) the Defendant Albuquerque Police Department's Motion to Dismiss Plaintiff's Claims Against the Albuquerque Police Department, filed April 7, 2014 (Doc. 17)("MTD 1"), is granted in part and denied in part; and (ii) the Defendant City of Albuquerque's Motion and Memorandum to Dismiss Plaintiff's Municipal Liability Claims Against City of Albuquerque, filed April 7, 2014 (Doc. 18), is granted in part and denied in part ("MTD 2").  The Court will grant Defendant Albuquerque Police Department's ("APD") request in the MTD 1 to dismiss Plaintiff Sharissa Young's federal claims against the APD, but deny the APD's request to dismiss the Plaintiffs' state-law claims against the APD.  The Court will grant Defendant City of Albuquerque's request in the MTD 2 to dismiss Young's federal claims against the City of Albuquerque, but deny the APD's request to dismiss the Plaintiffs' state-law claims against the City of Albuquerque.  Moreover, the Court will give the Plaintiffs until 5:00

p.m. MST on December 31, 2014, to move to amend the Complaint to add causes of action against Detective John Dear or any other individuals.  If the Plaintiffs fail to do so, however, the Court will decline to exercise its supplemental jurisdiction and will remand the state-law claims to state court.

*Counsel:*

Monnica L. Garcia
Law Office of Monnica L. Garcia, LLC
Albuquerque, New Mexico

       *Attorney for the Plaintiffs*

David J. Tourek
  City Attorney
Kristin J. Dalton
Stephanie Y. Lopez
  Assistant City Attorneys
Albuquerque City Attorney's Office
Albuquerque, New Mexico

       *Attorneys for the Defendants*